COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Powell and Senior Judge Annunziata
Argued at Alexandria, Virginia


COMMONWEALTH OF VIRGINIA
  DEPARTMENT OF SOCIAL SERVICES
                                                       MEMORANDUM OPINION[*] BY
v.        Record No. 2807-09-4                     JUDGE LARRY G. ELDER
                                                           JUNE 29, 2010

MARIO VELASQUEZ-FLORES


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                  Robert J. Smith, Judge

                    Noëlle L. Shaw-Bell, Assistant Attorney General (Kenneth T.
                    Cuccinelli, II, Attorney General; David E. Johnson, Deputy Attorney
                    General; Kim F. Piner, Senior Assistant Attorney General, on briefs),
                    for appellant.

                    Melinda L. VanLowe (Greenspun, Shapiro, Davis & Leary, P.C., on
                    brief), for appellee.


        The Commonwealth of Virginia Department of Social Services (DSS) appeals a circuit

court decision reversing the disposition of "Founded-Sexual Abuse-Level One" against Mario

Velasquez-Flores (appellee) made by a DSS hearing officer as the designee of the agency's

commissioner.  On appeal, DSS contends the circuit court erroneously usurped the hearing

officer's fact finding authority and that the hearing officer's decision was supported by

substantial evidence and should have been affirmed.  We agree with DSS.  Thus, we reverse the

ruling of the circuit court and remand with directions to reinstate DSS's determination.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

"The circuit court's role in an appeal from an agency decision [pursuant to the Administrative Process Act (APA)] is equivalent to an appellate court's role in an appeal from a trial court." York County Sch. Bd. v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991). "The factual issues on appeal are controlled solely by the agency record." Id. "It is not the [circuit] court's role [on appeal of an agency decision under the APA] to determine the credibility of the witnesses." Comm'r v. Fulton, 55 Va. App. 69, 80, 683 S.E.2d 837, 842 (2009); see Consolidation Coal Co. v. Dep't of Mines, 33 Va. App. 784, 790, 537 S.E.2d 15, 18 (2000). Unless the witness testimony accepted by the agency hearing officer is "'inherently incredible,'" a court reviewing the agency's action may not set aside the hearing officer's credibility determination. Va. Real Estate Bd. v. Kline, 17 Va. App. 173, 177, 435 S.E.2d 596, 599 (1993) (quoting Gamble-Skogma, Inc. v. FTC, 211 F.2d 106, 115 (8th Cir. 1954)); id. at 175-76, 435 S.E.2d at 598 (applying traditional civil and criminal law principles to the determination of witness credibility in review proceedings under the APA). "The reviewing court [must] view 'the facts in the light most favorable to sustaining the [agency's] action.'" Jones v. West, 46 Va. App. 309, 322-23, 616 S.E.2d 790, 797 (2005) (quoting Atkinson v. Va. Alcoholic Bev. Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985)).

Thus, on appeal of an agency decision, "the sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind necessarily would come to a different conclusion." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). In making this determination, "the reviewing court shall take due account of the presumption of official regularity, the experience

and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Id.

On appeal of an agency's determination on issues of law, the standards differ. "'If the issue falls outside the area generally entrusted to the agency, and is one in which the courts have specialized competence, i.e., the common law or constitutional law,'" the court need not defer to the agency's interpretation. Id. at 243-44, 369 S.E.2d at 8 (quoting Hi-Craft Clothing, Inc. v. NLRB, 660 F.2d 910, 914-15 (3d Cir. 1981)).

> However, where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . "judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion."

Id. at 244, 369 S.E.2d at 8 (quoting Va. Alcoholic Bev. Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)).

A.

CREDIBILITY OF APPELLEE'S CONFESSION

DSS challenges the circuit court's conclusion that "the reliability of [appellee's] confession is so doubtful" that it could not support the "founded" determination, contending the circuit court improperly usurped the hearing officer's fact finding authority. We agree.

Applying the above principles here, we conclude that the evidence, viewed in the light most favorable to the agency, supported the hearing officer's decision to credit appellee's recorded confession to Detective Thea Haddix. The evidence, so viewed, established that although appellee had an IQ of around 70, had been in special education classes in school, and continued to live with his parents at the age of twenty-two, he had graduated from high school and was working full-time as an associate trainer at Panera Bread at the time of the incident at

- 3 -

issue. Appellee's high school teacher later reported to Detective Haddix that appellee's learning deficit had been primarily in reading, and his teacher and both his parents also confirmed that he knew right from wrong.

Detective Haddix first spoke to appellee at his house, where his mother was also present. Appellee agreed at that time to come to the police station the following day for an interview. When appellee arrived at the police station the next day, his brother was also with him. Neither appellee's mother nor his brother said anything to Detective Haddix about appellee's supposed intellectual deficits prior to that interview.

During the recorded interview, although appellee's minor speech impediment was apparent, he displayed a reasonable understanding of Detective Haddix's statements and questions; contrary to appellee's claim that Detective Haddix gave him multiple choice questions from which he merely selected an answer among the options, the audio recording establishes that many of his responses were given in complete sentences in response to open-ended questions. The record does not compel a finding, as appellee argues, that Detective Haddix badgered him into confessing and fed him incriminating information which he merely repeated.

Appellee indicated repeatedly he did not touch M.M. inappropriately. After about an hour, Haddix encouraged appellee to think carefully about why M.M. might have reported he had touched her, and appellee responded, "I don't have to think about it – it never happened." Only after Detective Haddix repeatedly appealed to appellee's sense of right and wrong, told appellee she did not think he "meant to hurt [M.M.]," and asked whether he was sorry, did appellee begin to tell her about having any inappropriate contact with M.M. After an additional exchange in which appellee indicated the contact was accidental and lasted only a few seconds, Detective Haddix said, "I know you want to tell me, you're still sitting here cuz you want to tell me, what happened?" At that point, about two hours and twenty minutes into the three-hour

- 4 -

interview, appellee responded, "I was trying to take [M.M.'s] clothes off." He admitted taking M.M. to his bedroom, removing her jeans, and "thinking that's not right" while he was doing so.

Appellee then said he touched M.M., and Detective Haddix asked what he touched and how he touched. Only after appellee said he touched M.M.'s vagina with his hand did Detective Haddix use a series of multiple-choice questions to determine precisely what had happened. When Haddix inquired whether appellee had told the truth, he responded, "Yes," and when she inquired, "There's no reason you would tell me this if it didn't happen," appellee once again indicated he had told the truth about what had happened.

Contrary to the conclusion of the circuit court, this evidence fails to establish the credibility of the confession "is so doubtful" that, "considering the record as a whole, a reasonable mind *necessarily* would come to a different conclusion." Kenley, 6 Va. App. at 242, 369 S.E.2d at 7 (emphasis added). The circuit court, in its letter opinion, cited only the fact that "the interview during which appellee confessed began with [his] repeated denials of any touching," that "he confessed only after three hours of interviewing," and that "he is learning disabled and has an IQ of slightly less than 70." The circuit court stated these circumstances "call into question the reliability of the confession." The circuit court, however, did not serve as the finder of fact in these proceedings, in which Social Worker Ann Ochs testified it is "[r]are" for a suspected perpetrator to confess during the first five minutes of an interview and that perpetrators "generally . . . start off denying and then eventually come around and tell you what happened." Absent evidence to support a conclusion that no reasonable fact finder could credit appellee's confession, the circuit court lacked authority to reject the agency's determination that appellee's confession was worthy of belief. See Kline, 17 Va. App. at 175-77, 435 S.E.2d at 598-99 (discussing the applicability of general standard-of-review principles concerning credibility assessments to APA proceedings); cf. Bottenfield v. Commonwealth, 25 Va. App.

- 5 -

316, 321-27, 487 S.E.2d 883, 886-89 (1997) (holding the defendant's confession was voluntary where the evidence indicated he had an IQ of 61, was told he was not under arrest and was free to leave, and "was able to carry on an intelligent conversation" even though the interviewing officer "realized [he] was 'slow'" and the officer had to repeat or restate some of his questions to the defendant).

Thus, we hold the circuit court erroneously usurped the agency's fact finding authority.

B.

SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE FOUNDED COMPLAINT

1. Evidence to Prove Appellee was a Caretaker

Sexual abuse for which a complaint may be held "founded" by DSS occurs "when there is . . . any sexual act upon a child in violation of the law which is committed . . . by the child's parents or other persons responsible for the care of the child pursuant to § 63.2-100 of the Code of Virginia." 22 VAC 40-705-30(E). The applicable regulations define a "caretaker" as follows:

> "Caretaker" means any individual having the responsibility of providing care for a child and includes the following: (i) parent or other person legally responsible for the child's care; (ii) any other person who has assumed caretaking responsibility by virtue of an agreement with the legally responsible person; (iii) persons responsible by virtue of their positions of conferred authority, and (iv) adult persons residing in the home with the child.

22 VAC 40-705-10. DSS's Child Protective Services Manual further details how to determine whether an individual is a caretaker as defined in the regulations, stating the term includes "[b]abysitter[s]" and "[d]ay care personnel." Virginia Department of Social Services, Child Protective Services, Volume VII, Section III, Chapter A, Part III(D)(2.2), March 2009.

"'Founded' means that a review of the facts shows by a preponderance of the evidence that child abuse and/or neglect has occurred." 22 VAC 40-705-10.

Here, it is undisputed that Mrs. Velasquez, appellee's mother, assumed caretaking responsibility for M.M. by virtue of an agreement with M.M.'s mother, a person legally responsible for M.M.'s care. The evidence, viewed in the light most favorable to DSS, also established that Mrs. Velasquez delegated this authority to appellee's aunt and to appellee. Appellee told Detective Haddix that he watched the daycare children, including M.M., "every day" for about twenty minutes while his mother and his aunt showered and performed tasks such as cooking and doing laundry. He also operated the DVD player in the basement when needed for the children because his mother was unable to do so herself. Appellee reported that on the day of the events on which the founded complaint of abuse was based, M.M. came to the second floor of the house to ask him to put on a DVD in the basement. Appellee, instead of going to the basement, took advantage of his role as a caretaker to M.M. and asked her to accompany him to his bedroom, where he committed the acts of abuse upon which the founded complaint was based.

The question of whether appellee was a caretaker under the applicable statute is one "within the specialized competence of the agency" and, thus, is one with which "the agency has been entrusted with wide discretion by the General Assembly." Kenley, 6 Va. App. at 244, 369 S.E.2d at 8. Because the evidence supports DSS's finding that appellee was a caretaker pursuant to the applicable statute and regulation, we hold the agency did not abuse its delegated discretion.

### 2. Evidence to Prove Sexual Abuse

DSS also contends the evidence is sufficient to support the finding of the hearing officer, made by a preponderance of the evidence, that appellee sexually abused M.M. We agree. Appellee's confession to Detective Haddix, coupled with M.M.'s statements to her mother and

Officer Ryan Lazisky, provide sufficient evidence to support the agency's finding that appellee sexually abused M.M.

As already discussed, the record supports the agency's finding that appellee's confession was credible. Appellee admitted to Detective Haddix that he took four-year-old M.M. into his room, removed her jeans, put his hand inside her underpants, and touched her vagina with his hand for a period of time long enough that it caused her "private area [to] hurt" the next day. He admitted his penis was outside his pants while he touched M.M.'s vagina, that it was "going to" get "hard," and that he considered putting his penis in M.M.'s vagina. This constitutes substantial evidence supporting the hearing officer's finding that appellee sexually abused M.M. as that term is defined in the relevant regulations. See 22 VAC 40-705-30(E) (defining sexual abuse for purposes of a founded complaint as requiring proof, *inter alia*, of "any sexual act upon a child in violation of the law"); see also Code § 18.2-67.3 (proscribing aggravated sexual battery); Code § 18.2-67.10(6) (defining sexual abuse).

Assuming without deciding that corroboration of appellee's confession was required, as in criminal cases, cf. Cherrix v. Commonwealth, 257 Va. 292, 305, 513 S.E.2d 642, 651 (1999), those principles of criminal law provide that when the alleged perpetrator has given a full confession, only *slight* corroboration is required to establish the happening of the crime beyond a reasonable doubt, see id. In this administrative proceeding, the abuse must be established only by the lower standard of a preponderance of the evidence. Further, as the hearing officer acknowledged, hearsay evidence is admissible in administrative proceedings. See Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 701 (1998) (applying an earlier version of the APA).

M.M.'s hearsay statements to her mother, Ms. Amezene, and Officer Lazisky, which were relayed to agency staff, were relied upon by the hearing officer and support his conclusion

that appellee sexually abused M.M. as appellee admitted he had. Ms. Amezene reported first to Officer Lazisky and then to Ms. Ochs that as she bathed M.M. on the morning of Friday, November 16, 2007, "[M.M.] complained that her private area hurt." When Ms. Amezene asked M.M. whether anyone had touched her, M.M. "told her it was 'Mario'" and "showed her mother [where appellee had touched her]" "by making a rubbing gesture with her hand over her vagina." As a result of Ms. Amezene's report, Officer Lazisky also interviewed M.M., who again "demonstrated where and how [appellee] touched her." These statements corroborated appellee's admission that he sexually abused M.M.[1]

## II.

For these reasons, we hold the circuit court erred in concluding appellee's confession was not reliable and that the agency hearing officer's decision was not supported by substantial evidence in the record. Thus, we reverse the decision of the circuit court and remand for entry of an order consistent with this opinion.

Reversed and remanded.

---

[1] We need not consider the admissibility of M.M.'s unrecorded disclosure to Ms. Ochs in Ms. Amezene's presence immediately following one of the recorded interviews. See generally Jones, 46 Va. App. at 331, 616 S.E.2d at 802 (holding the admission of unrecorded statements made to DSS was error and was not harmless on the facts of that case). The DSS hearing officer excluded that unrecorded disclosure and still found the evidence sufficient to sustain the founded complaint of level one sexual abuse, and we hold substantial evidence in the record, not including the unrecorded disclosure to Ms. Ochs, supports the hearing officer's determination.